IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| FRANK KENNETH BENSON,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>MATT KRAMMER, Warden, et al.,<br><br>　　　　　　　　Respondents. | Case No.  2:06-CV-01584-MMS (HC)<br><br>ORDER |

Petitioner Frank Benson, an inmate at California State Prison, Solano, seeks a writ of habeas corpus under 28 U.S.C. § 2254 disputing the California state court's denial of habeas relief in his challenge to the April 14, 2005 decision of the California Board of Parole Hearings ("BPH") denying him parole. Petitioner alleges the denial of parole violated his rights under the Fourteenth Amendment of the Constitution. Having considered the arguments of the parties, the Court DENIES the petition for the reasons stated below.

**BACKGROUND**

Benson is serving a sentence of fifteen years to life for second degree murder. In 1981, Benson killed his wife after an argument about their son. Benson strangled his wife and then, believing her to be dead, weighted her body and threw

it off the San Mateo Bridge into the San Francisco Bay.  Benson ultimately confessed to the crime.

The BPH denied parole in April 2005, in Benson's ninth parole hearing. The BPH decision recited the facts of the murder and found that these facts indicated that Benson acted with a callous disregard for human life, and that Benson had a trivial motive for the murder.  The BPH also stated that Benson had a prior conviction for petty theft, a history of substance abuse that indicated an unstable social history, and that the Alameda County District Attorney opposed parole.  The Board recognized a number of positive aspects in Benson's record, including the fact that he has been disciplinary free for a long time, had received a positive psychological evaluation, and had been involved in substance abuse programming.  The BPH found, however, that the negative aspects in the record outweighed the positive, and thus denied parole.  The BPH also provided two recommendations to Benson.  First, the Board recommended that he again participate in the Breaking Barriers Program.  Second, the Board stated that Benson's record would benefit from further documentation of his study of Buddhism because Benson stated at several points in his hearing that his religious studies would provide him the proper direction to avoid trouble in the outside world.

Benson filed a habeas petition in California Superior Court, and the court denied the petition finding that "there was certainly some evidence, including, but not limited to the committing offense," to justify Benson's continued incarceration. Benson sought review in the California Court of Appeal which affirmed without discussion.  Justice Parrilli, however, indicated that she would have dissented but for the Supreme Court's decision in *In re Danneberg*, 104 P.3d 783 (Cal. 2005). Justice Pollak dissented.  He determined that the BPH erred in focusing on

2

unchanging factors such as the commitment offense and Benson's history of substance abuse, while ignoring the wealth of information that indicated that Benson no longer posed a threat to society.

Benson sought relief in the California Supreme Court. The Supreme Court also denied the petition in a summary disposition. The disposition indicated that Justices Kennard, Werdegar, and Moreno would have granted Benson's habeas petition. Benson filed a timely federal habeas petition.

## DISCUSSION

Under California law, prisoners serving indeterminate life sentences become eligible for parole after serving a minimum term of confinement. *Dannenberg*, 104 P.3d at 785-86. California regulations state that "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In making this suitability determination, the BPH looks to factors such as the nature of the commitment offense, the prisoner's record of violence, social history, behavior in prison, and any other information relevant to whether the prisoner poses an unreasonable risk to society. *See* Cal. Code Regs. tit. 15 § 2402(b)-(d).

If the prisoner files a state habeas petition, the state court reviews the decision of the BPH to determine whether "some evidence" supports the unsuitability determination. *See In re Shaputis*, 190 P.3d 573, 580-81 (Cal. 2008). California has defined "some evidence" to mean that the BPH's determination "must have some indicia of reliability." *In re Scott*, 15 Cal. Rptr. 3d 32, 52 (2004) (internal quotation marks omitted). A decision is not supported by "some evidence" if the BPH denies parole solely on the basis of facts of the commitment offense. *See In re Lawrence*, 190 P.3d 535, 549 (Cal. 2008).

3

In *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit explained the standard federal courts are to apply in reviewing the California court's denial of habeas relief to a prisoner challenging the BPH's denial of parole. The court held that a federal court may grant a writ of habeas corpus only if the "decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Id.* at 562-63. The Court here must therefore decide whether the California Superior Court's decision upholding the BPH's denial of parole unreasonably applied California's "some evidence" standard. *Id*.

The Superior Court correctly observed that the BPH did not rely exclusively on the nature of the commitment offense, although it was considered relevant. The determination that the murder was conducted in a cruel and dispassionate manner with no significant motive was a reasonable one. Benson strangled his victim for five minutes and threw her body off a bridge believing her to be dead. He killed her after becoming angry in an argument over his son. Additionally, Benson had a history of unstable relationships and substance abuse. These facts provide evidence that Benson still poses a danger to society. The BPH did not foreclose future parole, indicating it would need more information about Benson's religious study.

Because the BPH reasonably expected to see convincing evidence that Benson had rid himself of his drug habit and that he would not relapse if released, but Benson failed to do this. Benson testified at his hearing that he did not plan to continue substance abuse programming after release because he believed that he had cured his problem. At his hearing, Benson told the Board that his Buddhist religious studies would enable him to avoid substance abuse problems upon

4

release, but there is little in the record about this training. In light of this testimony, it was reasonable for the BPH to be concerned that Benson lacked a realistic plan for avoiding drugs if released.

Benson failed to carry his burden of showing that he no longer posed a danger to society because of his history of substance abuse. The history, combined with the savage nature of the murder, demonstrate that the California courts did not unreasonably apply the "some evidence" standard. While several appellate judges would have reached a different result, the application of the standard was not unreasonable. Benson's claim thus fails.

## CONCLUSION

For the above reasons, the petition for a writ of habeas corpus is DENIED. A certificate of appealability is GRANTED as to the issue of whether BPH's denial of parole violated Benson's Fourteenth Amendment right to due process because Petitioner has shown his claim is "debatable among reasonable jurists." *See Hayward*, 603 F.3d at 555.

DATED: September 8, 2010

/s/ *Mary M. Schroeder*
MARY M. SCHROEDER,
United States Circuit Judge
Sitting by designation

5